# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| **CASSIE SANDERS,** ) | |
| ) | |
| **and** ) | |
| ) | |
| **MATTHEW SANDERS,** ) | |
| **PLAINTIFFS,** ) | |
| ) | |
| **vs.** ) | **Case No.** |
| ) | |
| **PETTIS COUNTY, MISSOURI,** ) | **JURY TRIAL DEMANDED** |
| **Serve:** ) | |
| **Pettis County Prosecuting Attorney,** ) | |
| **415 S. Ohio Ave** ) | |
| **Sedalia, MO 65301** ) | |
| ) | |
| **PETTIS COUNTY** ) | |
| **SHERIFF'S OFFICE,** ) | |
| **Serve:** ) | |
| **319 S. Lamine Ave.,** ) | |
| **Sedalia, MO 65301** ) | |
| ) | |
| **SHERIFF BRAD ANDERS,** ) | |
| **individually and in his official capacity as the** ) | |
| **Chief law enforcement officer for Pettis** ) | |
| **County, MO** ) | |
| **Serve:** ) | |
| **319 S. Lamine Ave.,** ) | |
| **Sedalia, MO 65301** ) | |
| ) | |
| **DEPUTY MOORE,** ) | |
| **Individually and in his official capacity as a** ) | |
| **Sheriff's Deputy for the County of Pettis, MO** ) | |
| **Serve:** ) | |
| **319 S. Lamine Ave.,** ) | |
| **Sedalia, MO 65301** ) | |
| ) | |
| **DEPUTY BROWN,** ) | |
| **Individually and in his official capacity as a** ) | |
| **Sheriff's Deputy for the County of Pettis, MO** ) | |
| **Serve:** ) | |
| **319 S. Lamine Ave.,** ) | |
| **Sedalia, MO 65301** ) | |
| ) | |

**DEPUTY GOOCH,** )
**Individually and in his official capacity as a** )
**Sheriff's Deputy for the County of Pettis, MO** )
**Serve:** )
     **319 S. Lamine Ave.,** )
     **Sedalia, MO 65301** )
      )
**RANDI BATTSON** )
**A private citizen acting under color of state law** )
**Serve:** )
     **22984 Mather Road.,** )
     **Sedalia, MO 65301** )
      )
**JEDADIAH BATTSON** )
**A private citizen acting under color of state law** )
**Serve:** )
     **22984 Mather Road.,** )
     **Sedalia, MO 65301** )
      )
      )
**JAMES WEBBER** )
**A private citizen acting under color of state law** )
      )
          **DEFENDANTS.** )

## COMPLAINT

Plaintiffs Cassie Sanders and Matthew Sanders, (collectively "Plaintiffs") state the following for their Complaint against Pettis County, Missouri ("Defendant Pettis County"), Pettis County Sheriff's Office, Missouri ("Defendant Sheriff's Office"), Sheriff Brad Anders ("Defendant Anders"), Deputy Moore ("Defendant Moore"), Deputy Brown ("Defendant Brown"), Deputy Gooch ("Defendant Gooch"), Randi Battson ("Defendant Randi Battson"), Defendant Jedadiah Battson ("Defendant Jedadiah Battson"), and James Webber ("Defendant Webber")(collectively "Defendants"):

## PARTIES, JURISDICTION, AND VENUE

1. Defendant Pettis County is a Political Subdivision of the State of Missouri and is a legal entity responsible for itself and for the Pettis County Sherrif's Office.

2. Defendant Anders is a resident and citizen of the State of Missouri who was employed by Defendant Pettis County Sheriff's Office. At all times relevant, Defendant Anders was acting under color of state law in his capacity as Sheriff for Pettis County and was acting in the course and scope of his employment. Defendant Anders is sued in his individual capacity and official capacity.

3. Defendant Moore is a resident and citizen of the State of Missouri who was employed by Defendant Pettis County Sheriff's Office. At all times relevant, Defendant Moore was acting under color of state law in his capacity as Deputy for Defendant Pettis County Sheriff's Office and was acting in the course and scope of his employment. Defendant Moote is sued in his individual capacity and official capacity.

4. Defendant Brown is a resident and citizen of the State of Missouri who was employed by Defendant Pettis County Sheriff's Office. At all times relevant, Defendant Brown was acting under color of state law in his capacity as a Deputy for Defendant Pettis County Sheriff's Office and was acting in the course and scope of his employment. Defendant Brown is sued in his individual capacity and official capacity.

5. Defendant Gooch is a resident and citizen of the State of Missouri who was employed by Defendant Pettis County Sheriff's Office. At all times relevant, Defendant Gooch was acting under color of state law in his capacity as a Deputy for Defendant Pettis County Sheriff's Office and was acting in the course and scope of his employment. Defendant Gooch is sued in his individual capacity and official capacity.

6. Defendant Randi Batson is a citizen of Pettis County Missouri, and at all times relevant to this complaint was a private citizen acting under color of state law as an agent authorized by the Pettis County Sheriff's Office, or other County entity, and who civilly conspired with other Defendants in this Complaint to deprive Plaintiff's of their rights to due process of law through illegitimate means.

7. Defendant Jedadiah Batson is a citizen of Pettis County Missouri, and at all times relevant to this complaint was a private citizen acting under color of state law as an agent authorized by the Pettis County Sheriff's Office, or other County entity, and who civil conspiracy with other Defendants in this Complaint to deprive Plaintiff's of their rights to due process of law through illegitimate means.

8. Defendant James Webber is a citizen of Pettis County Missouri, and at all times relevant to this complaint was a private citizen acting under color of state law as an agent authorized by the Pettis County Sheriff's Office, or other County entity, and who committed civil conspiracy with other Defendants in this Complaint to deprive Plaintiffs of their rights to due process of law through illegitimate means.

9. This action arises under the Constitution and laws of the United States, including Article III, Section 1 of the United States Constitution and is brought pursuant to 42 U.S.C. §§ 1983 and 1988. Jurisdiction against Defendants is conferred upon this Court by 28 U.S.C. § 1331 and by the doctrine of supplemental jurisdiction under 28 U.S.C. § 1367.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the events or omissions giving rise to Plaintiff's claims occurred in Pettis County, in Missouri; and there is a federal question at issue.

## ALLEGED FACTS RELEVANT TO ALL COUNTS

11. March 9 2022- Randi Battson filed a replevin lawsuit against Cassier and Matthew Sanders in the Circuit Court of Pettis County, Missouri in case number 22PT-AC00254.

12. Along with her Peititon for an Order in Replevin, she filed a Proposed Order and a Proposed Bond.

13. On March 11, 2022 the associate circuit court judge, without a hearing, filed and Order that read:
    > "The court reviews the petition in Replevin and Conversion and the request for immediate delivery. Plaintiff shall file a surety bond in the sum of $4,500 to secure said property prior to the court issuing the order of delivery. RPBII"

14. On March 15, 2022, Counsel for Randi Battson filed a surety bond in the amount of $4,500.

15. On March 17, 2022, Counsel, Kayden Kent Guymon, entered his appearance on behalf of Cassie and Matthew Sanders in 22PT-AC00254.

16. On March 18, 2022, Counsel Guymon filed an Answer, a Counterclaim for a Stablemen's Lien, and a Motion for Change of Judge in  22PT-AC00254.

17. The Stablemen's Lien should have prevented the taking of property from Plaintiffs pursuant to due process, but was ignored by all State authorities.

18. On March 21, 2022 the Motion for Change of Judge was sustained.

19. On March 22, 2022 the honorable Judge Jeff Mittelhauser was appointed to hear and dispose of all issues in 22PT-AC00254.

20. On March 28, 2022 without any hearing in the matter occurring, an Order for Delivery in Replevin was issued.

21. A true and accurate copy of the Order for Delivery in Replevin is attached hereto as **EXHIBIT A.**

22. On March 29, 2022 Pursuant to Rule 99.09, Defense Counsel Guymon filed a written request for a hearing to determine Randi Battson's right to possession of the property pending trial on the merits, to Stay the Order in Replevin and for a hearing determining Cassie and Matthew Sanders rights under RSMo. § 430.150.

23. On March 29, 2022 Counsel Guymon noticed up his motions for April 5, 2022 and the Court continued it to April 6, 2022 at 10:30 a.m.

24. On March 29 2022 -Around 3pm in the afternoon three Sheriff's deputies, came to Plaintiffs' home to retrieve the cattle; and they brought with them unwelcome private

citizens to assit them in the wrongful taking of the cattle, and permitted them to trespass, burglarize, destroty property and perpetrate other wrongs against plaintiffs while claiming to have the authority of the State to do so.

25. At the time the Defendants arrived at the house Plaintiffs were at work.

26. Then, with no resident of the home present, the deputies entered Plaintiffs' locked garages and barn and used Plaintiffs personal property, and destroyed Plaintiffs' property

27. The deputies cut locks and chains, caused damage to fence posts (breaking them off at the ground), dumped feed all over Plaintiffs' property, made countless ruts in Plaintiffs' yard

28. Plaintiffs' driveway is paved.

29. Plaintiffs do not drive in their yard due to their having a sprinkler system.

30. While the deputies were at Plaintiffs' home, Plaintiffs' daughter-in-law drove by and called Cassie Sanders to ask what was going on because there were Pettis County Sheriff's vehicles and multiple other trucks and trailers at Plaintiffs' home, but she didn't see Plaintiffs' vehicles.

31. Up until this point, Plaintiffs were not aware of anyone being at their house.

32. Plaintiffs were never served anything.

33. After loading up the cattle, causing significant property damage and violating Plaintiffs' civil rights, the deputies taped part of the order to the door of Plaintiff's home just prior to leaving.

34. In the Order it stated that Matthew J and Cassie M Sanders were to deliver the cattle to the Sheriff's office and if they refused to deliver them then the sheriff himself would go and retrieve the cattle and deliver them to the plaintiff.

35. Plaintiffs were never given that opportunity to turn over the cattle to the Sheriff's office.

1. MO Civ P. R. 99.05 states that notice is required for a prejudgment seizure: reading in total:

"**99.05. Prejudgment Seizure - Notice Required**

When a prejudgment seizure of property is made, a written notice shall be served on the defendant advising the defendant of the right to file a delivery bond and of the right to request a hearing to determine the plaintiff's right to possession of the property."

36. Plaintiff's were given no notice of their rights, and the only paper served on them was one page taped to their door indicating that Plaintiff's were ordered to deliver the property to the sheriff, or the sheriff was authorized to take the property should they refuse to turn the property over.

37. Plaintiff's were never given notice of their rights to post a bond or to a hearing.

38. Furthermore, plaintiff's were given no notice that they were ordered to turn the property over to the sheriff prior to the sheriff taking the property.

39. The Missouri Rules of Civil Procedure, the State Statutes covering Replevin, and the Order all state that notice is required, and that Plaintiffs must be given the opportunity to turn the property over.

40. By the time Plaintiff's got notice that they were to willfully turn the cattle over to the Pettis County Sheriff, the Sheriff had already trampled Plaintiff's rights to their property, and to equal protection, and to due process, and to be secure in their persons and things.

41. Plaintiffs own two businesses in Benton County, Missouri, and travel to Warsaw every day for work.

42. It is roughly 25-30 minutes one way from the shop to their house.

43. The property that the Plaintiffs' home sits on is entirely fenced with two entry points that are gated.

44. Those were not locked at the time of entry but all other gates that were on the property including stall doors were locked.

45. The Sheriff's Deputies entered the property without a search warrant or permission of the landowner.

46. When Cassie Sanders got word of what was happening, she immediately left the shop and headed home.

47. By the time Cassie Sanders arrived home the deputies were gone, and nobody was there.

48. Plaintiffs' daughter-in-law took a video of what she observed and subsequently sent it to Plaintiff Cassie Sanders.

49. Plaintiff Cassie Sanders knew one of the Sheriff's Deputies that was seen on the video, that being Pettis County Sheriff's Deputy Jimmy Moore.

50. Cassie Sanders text messaged Jimmy Moore about the incident.

51. When asked if he was at my house Jimmy Moore said "yes," but indicated that he didn't know anyone else's names that was at Plaintiffs' house that day.

52. Cassie Sanders found one page of the Order taped to their door, which indicated that there were additionally "exhibits a and b" – which were not posted with the Order.

53. Cassie Sanders took a picture with her cell phone of the Order which was taped to her door; a true and accurate copy of which is attached to this pleading as **EXHIBIT B**.

54. This is not considered "service" of an order. It was taped with two small slivers of tape to the window on the front door.

55. 9 heifers and 5 calves were taken from the Plaintiff's Property.

56. On March 31, 2022 the Sheriff's return was filed with the circuit clerk of Pettis County and reflects that service of the Order was made on March 29, 2022 at 1445 hours by J. Moore #617.

57. A true and accurate copy of the Sheriff's return is attached to this pleading as **EXHIBIT C**.

58. On April 1, 2024 Counsel Guymon on behalf of Matthew and Cassie Sanders filed a Motion for a Restraining Order or in the Alternative for a Preliminary Injunction.

59. North Georgia Finishing applies that same basic principle so as to require notice and hearing in garnishment proceedings.

60. Berrey, on the basis of Fuentes, held that before an order of delivery is made following the filing of a petition in replevin, the judge (not the clerk) must hold a prejudgment hearing and must make a finding of the probable validity of plaintiff's claim.

61. The underlying objective of requiring notice and hearing in situations such as those in Fuentes, North Georgia Finishing, and Berrey is to provide a mechanism whereby a judicial officer can and does determine in advance of the requested delivery of possession that such delivery will not result in arbitrary and unfair deprivation of the possession which defendant then has.

62. Plaintiff was scheduled to have court on 4/6/22 in regards to the possession of the cattle.

63. The bond was not sufficient, per statue it was supposed to be double the amount of the claim.

64. The bond in the Battson case is only for $4,500.

65. Furthermore, Cassie and Matthew Sanders had already filed for a stablemen's lien, which should of prevented them from removing the chattels from the Sanders' possession.

66. After the cattle were picked up; Cassie Sanders went and spoke with assistant prosecuting attorney Anthony Farkas and asked to file charges.

67. Anthony Farkas stated that since they were the county attorney he would have to bring in an outside prosecutor to review this.

68. On May 12, 2022, Cassie Sanders had a meeting with Pettis County representatives including but not limited to: The Missouri Prosecuting Attorney's Office, the Prosecuting Attorney Phillip Sawyer ("Sawyer"), then Assistant Prosecuting Attorney Anthony Farkas ("Farkas") and Sheriff Brad Anders.

69. Strangely; on or about the same date (May 12, 2022); when the County officials knew what they had done, and that Plaintiff was seeking damages, Plaintiff the docket entry changes to reflect a that notice by posting would be sufficient.

    a. This docket change is inexplicable except to cover the tracks of County officials and the Defendant's; and is a glaring attempt to deprive Plaintiffs of their right to equal protection, and due process of laws.

70. The Pettis County Prosecuting Attorney's Office and the Pettis County Sheriff's Office admitted to being in the wrong.

71. Prosecuting Attorney Sawyer, and then Assistant Prosecuting Attorney Farkas as well as Defendant Anders stated that they were going to get to the bottom of it.

72. Subsequent to their meeting, Cassie Sanders called Defendant Anders to inquire as to whether charges he had filed against any of the people that had entered her property.

73. Additionally, Cassie Sanders asked Sheriff Anders for body cam footage from the deputies.

74. In response to Cassie Sanders inquiries Defendant Anders indicated that he would let Sanders review the body camera footage but that he had not filed charges against anyone yet.

75. Defendant Anders made these statements via text message.

76. Cassie Sanders waited a couple more weeks and called asking Defendant Anders would conduct a wellness check on the cattle and ensure they were still in Randi Battson's possession.

77. Defendant Anders stated that he would call the Pettis County Prosecutor and ask if he could do that.

78. Defendant Anders did not reach back out to Cassie Sanders

79. Having had no communication back from Defendant Anders, Cassie Sanders went and spoke with Phillip Sawyer personally.

80. Philip Sawyer told Cassie Sanders that he didn't know the laws regarding cattle but he would do what he could to help her.

81. Cassie Sander's explained that she still wanted to press charges for the incidents that happened when the cattle were picked up.

82. No charges were ever filed against any of the perpetrators of the March 29, 2022 incidents.

83. Additionally, no information has been given to the Plaintiffs even thought they have made several requests to review same.

84. The full names of the deputies and other parties who entered Plaintiff's land on March 29, 2022 have been denied to Plaintiffs though it has been requested.

85. In response to a February 2024 Sunshine request, Pettis County has indicated that all body camera footage of the incident have been destroyed.

86. The body camera footage from the Pettis County Sheriff's Deputies no longer exits.

87. Defendant's knew that the body camera and other evidence which has been destroyed was desired by Plaintiff, and they have gone out of their way to deprive her off the information; further violating Plaintiffs' rights to equal protection, and due process.

## APPLICABLE RULES AND CASE LAW

88. If the court finds that the facts stated in the affidavit show that the party has the right to immediate possession an order shall be issued directing the sheriff to take possession of the property and deliver it to the party upon compliance with Rule 99.06. ***Mo R. Civ. P. 99.04.***

89. When a prejudgment seizure of property is made, a written notice shall be served on the defendant advising the defendant of the right to file a delivery bond and of the right to request a hearing to determine the plaintiff's right to possession of the property. ***Mo. R. Civ. P. 99.05***

90. The plaintiff shall file a sufficient bond, approved by the court, executed by the plaintiff as principal and one or more sufficient sureties to the effect that they are bound to the defendant in double the value of the property for the prosecution of the action with effect and without delay, for the return of the property to the defendant, if return thereof be adjudged, and, in default of such delivery for the payment of all damages for injuries to the property thereafter, for the payment of all damages for the taking and detention thereof, and for all costs. ***Mo. R. Civ. P. 99.06***

91. The defendant may file, either before or after delivery of the property to the plaintiff, a sufficient redelivery bond, approved by the court, executed by the defendant as principal and one or more sufficient sureties to the effect that they are bound to the plaintiff in double the value of the property for the delivery of the property to the plaintiff, if such delivery be adjudged, and in default of such delivery for the payment of the value of the property, for the payment of all damages for injury to the property thereafter, for the payment of all damages for the taking and detention thereof, and for all costs. ***Mo. R. Civ. P. 99.07***

92. If a redelivery bond is filed before delivery of the property to the plaintiff the defendant may retain the property. If a redelivery bond is filed after the property has been taken from the defendant an order shall be issued directing the sheriff to take possession of the property and deliver it to the defendant. ***Mo. R. Civ. P. 99.08.***

93. As an alternative to filing a redelivery bond the defendant may file a written request for a hearing to determine the plaintiff's right to possession of the property pending trial on the merits. The hearing shall be held within ten days after the filing of the request. ***Mo. R. Civ. P. 99.09***.

94. In claiming that plaintiff's prejudgment seizure of the mobile home from defendants' possession was an unlawful taking of property without due process of law, the first point asserted on appeal, defendant relies primarily on Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); North Georgia Finishing, Inc. v. Di-Chem, Inc., 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); and State ex rel. Williams v. Berrey, 492 S.W.2d 731 (Mo. banc 1973).

95. Fuentes holds that procedural due process requires notice and an opportunity to be heard before a state may authorize prejudgment seizure of property in the possession of one person upon application of another.

96. North Georgia Finishing applies that same basic principle so as to require notice and hearing in garnishment proceedings.

97. Berrey, on the basis of Fuentes, held that before an order of delivery is made following the filing of a petition in replevin, the judge (not the clerk) must hold a prejudgment hearing and must make a finding of the probable validity of plaintiff's claim.

98. The underlying objective of requiring notice and hearing in situations such as those in Fuentes, North Georgia Finishing, and Berrey is to provide a mechanism whereby a judicial officer can and does determine in advance of the requested delivery of possession that such delivery will not result in arbitrary and unfair deprivation of the possession which defendant then has.

99. 'Since the essential reason for the requirement of a prior hearing is to prevent unfair and mistaken deprivations of property, however, it is axiomatic that the hearing must provide a real test. ' (D)ue process is afforded only by the kinds of 'notice' and 'hearing' that are aimed at establishing the validity, or at least the probable validity, of the underlying claim against the alleged debtor before he can be deprived of his property . . ..' Sniadach v. Family Finance Corp., supra, 395 U.S. at 343, 89 S.Ct. at 1823 (23 L.Ed.2d 349). (Harland, J., concurring). Fuentes v. Shevin, 407 U.S. at p. 97, 92 S.Ct. at 2002

100. 'For when a person has an opportunity to speak up in his own defense, and when the State must listen to what he has to say, substantively unfair and simply mistaken deprivations of property interests can be prevented'... Morris Plan Co. v. Excelsior Estates, Inc., 540 S.W.2d 44 (Mo. 1976)

101. In Associates Financial Services Co., Inc. v. Salky, 510 S.W.2d 41 (Mo. App. 1974) the Court held that the Florida and Pennsylvania prejudgment replevin provisions work a deprivation of property without due process of law insofar as they deny the right to a prior opportunity to be heard before chattels are taken from their possessor.' (l.c. 407 U.S. at 2002, 96). (Emphasis supplied). Associates Financial Services Co., Inc. v. Salky, 510 S.W.2d 41 (Mo. App. 1974)

102. Fuentes in no way declared that a cause of action in replevin was unconstitutional, only that prejudgment seizure without a due process hearing was unconstitutional. Associates Financial Services Co., Inc. v. Salky, 510 S.W.2d 41 (Mo. App. 1974)

103. In State ex rel. Williams v. Berrey, supra, the Missouri Supreme Court specifically refrained from a holding that Fuentes, per se, made the Missouri replevin statutes unconstitutional. It held only that a seizure made without a hearing was void. As stated there:

'It must be remembered that a suit in replevin looks to a judgment at some time after the suit is filed regardless of whether or not prejudgment possession of the chattels is obtained. The prejudgment possession portion of the replevin statutes is in aid of the principal suit--replevin--but is not the substantive suit itself. The judgment for a plaintiff in replevin vests the right to the possession of certain property in plaintiff and adjudicates that the defendant is not entitled to that possessory right.'... Associates Financial Services Co., Inc. v. Salky, 510 S.W.2d 41 (Mo. App. 1974).

## COUNT I

### 42 USC § 1983 –TRESSPASS TO CHATTLES

**[Defendants Anders, Moore, Brown, Gooch, Randi Battson, Jedadiah Battson and James Webber]**

104.    Plaintiff incorporates the above allegations as though fully set forth herein.

105.    42 U.S.C. § 1983 provides that: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

106.    Plaintiff is and was a citizen of the United States and thus entitled to the full benefits and equal protection of the Federal Constitution and all laws and regulations enacted thereunder.

107.    Defendants are persons under 42 U.S.C. § 1983.

108.    Defendants were acting under the color of the statutes, ordinances, regulations, customs, and law of the State of Missouri and their acts or omissions were conducted within the scope of their official duties or employment; or by some other authorized show of authority by governmental officials and agents.

109.    At the time of the occurrences that are subject of Plaintiff's Complaint, Plaintiff had clearly established constitutional rights, including a right under the Fourth, Fifth and Fourteenth amendments to be secure in their property from the unlawful taking by persons acting under color of law.

110.    Any reasonable Sheriff, or Sheriff's Deputy, or Law Enforcement Officer would know or should have known of these rights at the time of the complained of conduct as they were clearly established.

111. At the time of the taking of the cattle, Plaintiff had a right to possess the property; until they were given notice of their obligation to turn them over; and then given notice of their right to post a redelivery bond, or to a hearing within 10 days.

112. The defendants intentionally interfered with Plaintiffs' use or possession of the property.

113. The cattle have been damaged or disposed off as a result of Defendants' actions.

114. Plaintiffs did not consent to the defendants' action.

115. Plaintiffs' were harmed by the defendants' action.

116. The Defendants' conduct in failing to take any reasonable steps so protect and prevent the taking by the other Defendants, described herein, was negligent.

117. The Defendants should have realized that the conduct of the other Defendants, described herein, involved an unreasonable risk of causing Plaintiffs and their family emotional distress.

118. Defendants' actions were willful, wanton and intentional.

119. As a direct and proximate result of Defendants' actions, Plaintiff suffered and will continue to suffer financially, as well as suffer mentally, and has a loss of enjoyment of both the use of their land, and their life; as have their children.

120. Defendant's conduct, as described above, was outrageous and exhibited an evil motive or reckless indifference to the rights of others, thereby entitling Plaintiff to an award of punitive damages.

121.

**WHEREFORE,** Plaintiffs pray for judgment against Defendants in a fair and reasonable amount in excess of seventy-five thousand dollars ($75,000.00) for the harms and losses they have suffered, for their costs incurred herein, for attorneys' fees, for punitive damages, and for any further relief this Court deems just and proper.

## COUNT II

### 42 USC § 1983 –TRESSPASS TO LAND

**[Defendants Anders, Moore, Brown, Gooch, Randi Battson, Jedadiah Battson and James Webber]**

122. Plaintiff incorporates the above allegations as though fully set forth herein.

123. 42 U.S.C. § 1983 provides that: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of

Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

124. Plaintiff is and was a citizen of the United States and thus entitled to the full benefits and equal protection of the Federal Constitution and all laws and regulations enacted thereunder.

125. Defendants are persons under 42 U.S.C. § 1983.

126. Defendants were acting under the color of the statutes, ordinances, regulations, customs, and law of the State of Missouri and their acts or omissions were conducted within the scope of their official duties or employment.

127. At the time of the occurrences that are subject of Plaintiff's Complaint, Plaintiff had clearly established constitutional rights, including a right under the Fourth, Fifth and Fourteenth amendments to be secure in their property from the unlawful taking by persons acting under color of law.

128. Any reasonable Sheriff, or Sheriff's Deputy, or Law Enforcement Officer would know or should have known of these rights at the time of the complained of conduct as they were clearly established.

129. Plaintiffs had a right to exclusive possession to the property located at 23049 Mather Road Sedalia, MO 65301

130. Defendants violated the right of exclusive possession when they entered the Plaintiffs' property without permission, broke locks and entered structures without the consent of the owners, and for the purpose of depriving them of property which they had the right to possess.

131. Defendants new or should have know that they did not have the right to enter the land.

132. Defendants new or should have known they did not have the right to enter building, and break locks.

133. The Defendants' actions were outside any authority they possessed.

134. Plaintiffs' property was severely damaged as a result of Defendants trespass, and Plaintiffs have sustained emotional pain and suffering, loss of use of enjoyment.

135. An actual interference with the right of exclusive possession, which is known as the entry element.

136. Defendants' entry upon the Plaintiffs' land without their consent was intentional, or was done negligently.

137. The Defendants' conduct in failing to take any reasonable steps so protect and prevent the unlawful entry, and damage to Plaintiffs' property, was intentional or negligent.

138. The Defendants should have realized that their conduct, and the conduct of the other Defendants, described herein, involved an unreasonable risk of causing Plaintiff emotional distress.

139. Defendants' actions were willful, wanton and intentional.

140. As a direct and proximate result of Defendants' actions, Plaintiff suffered and will continue to suffer from a medically diagnosable and medically significant emotional distress, including anxiety and post-traumatic stress disorder.

141. Defendants' conduct as described above, was outrageous and exhibited an evil motive or reckless indifference to the rights of others, thereby entitling Plaintiff to an award of punitive damages.

**WHEREFORE,** Plaintiffs pray for judgment against Defendants in a fair and reasonable amount in excess of seventy-five thousand dollars ($75,000.00) for the harms and losses they have suffered, for their costs incurred herein, for attorneys' fees, for punitive damages, and for any further relief this Court deems just and proper.

## COUNT III

**42 U.S.C. § 1983 – Violation of the Equal Protection Clause of the Fifth and Fourteenth Amendments of the United States Constitution and article I, section 2, of the Missouri**

**[Defendants Anders, Moore, Brown, Gooch, Randi Battson, Jedadiah Battson and James Webber]**

142. Plaintiff incorporates the above allegations as though fully set forth herein.

143. 42 U.S.C. § 1983 provides that: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

144. Plaintiff is and was a citizen of the United States and thus entitled to the full benefits and equal protection of the Federal Constitution and all laws and regulations enacted thereunder.

145.     Defendants are persons under 42 U.S.C. § 1983.

146.     Defendants were acting under the color of the statutes, ordinances, regulations, customs, and law of the State of Missouri and their acts or omissions were conducted within the scope of their official duties or employment.

147.     At the time of the occurrences that are subject of Plaintiff's Complaint, Plaintiff had clearly established constitutional rights, including a right under the Fourth, Fifth and Fourteenth amendments to be secure in their property from the unlawful trespass, searches and seizures by persons acting under color of law.

148.     Any reasonable Sheriff, or Sheriff's Deputy, or Law Enforcement Officer would know or should have known of these rights at the time of the complained of conduct as they were clearly established.

149.     Defendants Randi Battson, Jedadiah Battson and James Webber committed their actions under the show of force, and the apparent authority granted them by statute, custom, or laws of the State of Missouri.

150.     The Equal Protection Clause requires the government treat all similarly situated people alike.

151.     Plaintiff had a right to notice to turn the property over prior to the Sheriff being able to take the property by force.

152.     Plaintiff had a right to notice of her right to post a redelivery bond or to a hearing within 10 days but was given notice of both.

153.     Defendants' actions, as described herein, were objectively unreasonable in light of the facts and circumstances confronting them and violated the Fourth, Fifth and Fourteenth Amendment rights of Plaintiff.

154.     Defendants' actions, as described herein, were also malicious and/or involved reckless, callous, and deliberate indifference to Plaintiff's federally protected rights.

155.     The unlawful search, and seizure perpetrated by Defendants shocks the conscience and violated Plaintiff's Fourth, Fifth and Fourteenth Amendment rights.

156.     Defendants engaged in the conduct described in this Complaint willfully, maliciously, in bad faith, and in reckless disregard of Plaintiff's federally protected Constitutional rights.

157.     Defendants knew, or should have known, that their acts as described herein were prohibited under federal law.

158. Defendants were deliberately indifferent to plaintiff's rights.

159. Defendants' mistreatment of Plaintiffs was perpetrated pursuant to Pettis County's policies, customs, decisions, ordinances, regulations, widespread habit, usage or practice.

160. As a direct and proximate result of Defendants' interference with Plaintiff's federal constitutional and statutory rights, Plaintiffs have suffered and will continue to suffer physical and emotional injuries and have suffered and will continue to suffer pain of the body and mind, mental anguish, humiliation, embarrassment, loss of enjoyment of life, anxiety, post-traumatic stress disorder; and financial loss.

161. Plaintiff is entitled to attorneys' fees and costs pursuant to 42 U.S.C. 1988.

162. Defendants' conduct was motivated by evil motive or intent and shows reckless or callous indifference to the federally protected rights of others, thereby justifying an award of punitive damages in such sum as will serve to punish and deter Defendants, and others, from like conduct in the future.

**WHEREFORE,** Plaintiffs pray for judgment against Defendants in a fair and reasonable amount in excess of seventy-five thousand dollars ($75,000.00) for the harms and losses they have suffered, for their costs incurred herein, for attorneys' fees, for punitive damages, and for any further relief this Court deems just and proper.

## <u>COUNT IV</u>

**42 U.S.C. § 1983 – violation of the Due Process Clause, of the Fourth, Fifth and Fourteenth Amendments**

**[Defendants Anders, Moore, Brown, Gooch, Randi Battson, Jedadiah Battson and James Webber]**

163. Plaintiff incorporates the above allegations as if fully set forth herein.

164. 42 U.S.C. § 1983 provides that: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

165. Plaintiff is and was a citizen of the United States and thus entitled to the full benefits and equal protection of the Federal Constitution and all laws and regulations enacted thereunder.

166. Pettis County is a person under 42 U.S.C. § 1983.

167. Pettis County, their officials, employees, agents, and representatives were, at all times relevant, acting under the color of ordinances regulations, customs, and law of the State of Missouri.

168. At the time of the occurrences that are subject of Plaintiff's Complaint, Plaintiff had clearly established constitutional rights, including the right under the Fourth, Fifth and Fourteenth Amendments to be secure in their person and possession from unlawful trespasses by the state and federal government, and preservation of Plaintiffs' rights to due process.

169. The Pettis County policymaking officials, employees, agents, and representatives knew, or should have known, of these rights at the time of the complained of conduct as they were clearly established.

170. The acts or omissions of Pettis County and their policymaking officials, employees, agents, and representatives, as described herein, deprived Plaintiff of her constitutional and statutory rights and caused Plaintiffs' damages.

171. Any reasonable Sheriff, or Sheriff's Deputy, or Law Enforcement Officer would know or should have known of these rights at the time of the complained of conduct as they were clearly established.

172. Pettis County and their policymaking officials, employees, agents, and representatives intentionally, knowingly and purposely deprived Plaintiff of her clearly established rights, privileges, and immunities as secured by the Constitution and laws of the United States in violation of 42 U.S.C. § 1983.

173. Pettis County had the authority and duty to train, supervise, discipline, and otherwise control the jail officers and guards, including the Defendants identified herein.

174. Pettis County had a duty to provide reasonable training to prevent their employees from wrongfully sexually harassing and/or assaulting Plaintiff in violation of the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

175. Pettis County failed to train, inadequately trained, or negligently trained their employees in a manner that a reasonable county would have under the circumstances.

176. Pettis County and their policymaking officials, employees, agents, and representatives maintained policies, procedures, customs, and/or practices exhibiting deliberate indifference to the constitutional rights of citizens, including those, which were the moving forces behind and proximately caused the violations of Plaintiffs' Constitutional rights as set forth herein.

177. Pettis County's deliberate indifference to Plaintiffs' Constitutional rights includes, but is not limited to:

a. failing to train Defendants Anders, Moore, Brown and Gooch in proper procedure;
b. failing to train Defendants Anders, Moore, Brown and Gooch about the granting of authority to private citizens and what is and is not acceptable and prohibited under all circumstances;
c. failing to supervise the individual Defendant employees listed herein;
d. failing to adopt and/or enforce proper policies in the identification and prevention of improper infringement upon the rights of citizens;
e. such further acts of deliberate indifference as discovery will reveal.

178. Pettis Counties and their policymaking officials, employees, agents, and representatives have developed and maintained long-standing, departmentwide customs, policies, procedures, and practices, and/or failed to properly train and/or supervise their officers in a manner amounting to deliberate indifference to the constitutional rights of Plaintiff and other jail detainees. The inadequacy of training and/or supervision is so likely to result in violation of Constitutional and federal rights, such as those described herein—in light of the particular duties assigned to their employees including the Defendants identified herein —that the failure to provide proper training and supervision is deliberately indifferent to those rights.

179. The deliberately indifferent training and supervision provided by Pettis Counties and their officials, employees, agents, and representatives resulted from a conscious and deliberate choice to follow a course of action from among various alternatives available to it and were moving forces in the constitutional and federal violation injuries complained of by Plaintiff.

180. As a direct and proximate result of Pettis Counties' interference with Plaintiff's federal Constitutional and statutory rights, Plaintiff has suffered the aforementioned damages and losses, which are expected to be ongoing.

181. Plaintiff is entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

**WHEREFORE,** Plaintiffs pray for judgment against Defendants in a fair and reasonable amount in excess of seventy-five thousand dollars ($75,000.00) for the harms and losses they have suffered, for their costs incurred herein, for attorneys' fees, for punitive damages, and for any further relief this Court deems just and proper.

## COUNT V

### 42 U.S.C. § 1983 – SPOILATION OF EVIDENCE

### [Defendants Anders, Moore, Brown and Gooch]

182. Plaintiff incorporates the above allegations as if fully set forth herein.

183. Defendants intentionally or negligently destroyed evidence which they knew or should have known would be of evidentiary value to Plaintiffs.

184. Plaintiffs are entitled to the inference that the evidence destroyed, including video recordings of the entry upon the Plaintiffs' property and taking of the chattels which occurred on or about March 29, 2022.

185. As a result of Defendants' actions Plaintiffs have been damaged in their ability to bring their claim.

**WHEREFORE,** Plaintiffs pray for judgment against Defendants in a fair and reasonable amount in excess of seventy-five thousand dollars ($75,000.00) for the harms and losses they have suffered, for their costs incurred herein, for attorneys' fees, for punitive damages, and for any further relief this Court deems just and proper.


## COUNT VI

### 42 U.S.C. § 1983 – CIVIL CONSPIRACY

**[Defendants Anders, Moore, Brown, Gooch, Randi Battson, Jedadiah Battson and James Webber]**

186. Plaintiff incorporates the above allegations as if fully set forth herein.

187. Civil conspiracy occurs when two or more people agree to engage in an activity to accomplish an unlawful purpose or goal and cause injury to another as a result. A civil conspiracy can exist when:

    a. Conspirators agree to work to achieve an unlawful goal, or
    b. Conspirators agree to achieve a lawful goal by unlawful means.

188. Randi Battson works as the manager of the local animal shelter and assists with animal control often working side by side with law enforcement and city and county officials; including the Sheriffs Office, Circuit Clerk's Office and others.

189. On March 28, 2022 a Delivery Order was entered and within approximately 24 hours; the Battson's had the Order executed by the Sheriff without any notice to Plaintiffs' and with no opportunity to turn the chattels over pursuant to due process requirements.

190. The Defendants conspired to deprive Plaintiffs' of their right to due process of laws via unlawful means.

191. Additionally, there is further evidence of conspiracy, by Defendants and possibly unknown individuals, likely the clerk and prosecuting attorney's office to change the docket to limit the exposure, or to weaken Plaintiffs' lawful claims.

192. When the docket was changed to reflect notice by posting, as well as the spoilation of evidence have been perpetrated against Plaintiffs; it can be for no other purpose but for the purpose of depriving them of due process.

**WHEREFORE,** Plaintiffs pray for judgment against Defendants in a fair and reasonable amount in excess of seventy-five thousand dollars ($75,000.00) for the harms and losses they have suffered, for their costs incurred herein, for attorneys' fees, for punitive damages, and for any further relief this Court deems just and proper.

## COUNT VII

### 42 USC § 1983 - Negligent Infliction of Emotional Distress

**[Defendants Anders, Moore, Brown, Gooch, Randi Battson, Jedadiah Battson and James Webber]**

193. Plaintiff incorporates the above allegations as if fully set forth herein.

194. The Defendants' conduct in failing to take any reasonable steps so protect and prevent the taking by the other Defendants, described herein, was negligent.

195. The Defendants should have realized that the conduct of the other Defendants, described herein, involved an unreasonable risk of causing Plaintiffs emotional distress.

196. Defendants' actions were willful, wanton and intentional.

197. As a direct and proximate result of Defendants' actions, Plaintiffs and their family suffered and will continue to suffer emotional distress, including anxiety, and a fear and distrust of the government.

198. As a direct and proximate result of Defendants' actions, Plaintiffs and their family suffered and will continue to suffer loss of use of enjoyment of both.

199. Defendants' conduct as described above, was outrageous and exhibited an evil motive or reckless indifference to the rights of others, thereby entitling Plaintiff to an award of punitive damages.

**WHEREFORE,** Plaintiffs pray for judgment against Defendants in a fair and reasonable amount in excess of seventy-five thousand dollars ($75,000.00) for the harms and losses they have suffered, for their costs incurred herein, for attorneys' fees, for punitive damages, and for any further relief this Court deems just and proper.

# COUNT VIII

## 42 RESPONDEAT SUPERIOR

### [Defendant Pettis County]

200.    Plaintiff incorporates the above allegations as if fully set forth herein.

201.    An employer/employee relationship existed between Defendants Pettis County and its employees and Defendants Anders, Moore, Brown and Gooch, identified herein at all times herein.

202.    Defendant Pettis County controlled or had the right to control the conduct of Defendants employee Sheriff, Deputies, attorneys and clerks, as identified and described herein.

203.    Defendants Pettis County employee jail guards and officers' conduct described herein fell within the scope of the employment relationship between Defendant Pettis County, Sheriff's Office employees, and other county employees identified herein.

204.    As a direct and proximate result of Defendant Pettis County's Defendant, identified herein, actions —for which Defendants Montgomery and Warren Counties are vicariously liable—Plaintiff suffered and will continue to suffer injuries, including physical and mental injuries, pain and suffering, humiliation, and mental anguish, emotional trauma including stress, anxiety and posttraumatic stress disorder, resulting medical care and hospitalizations and attempted suicide.

205.    Defendant Pettis County, Sheriff, Deputies, and employees, identified herein, actions — for which Defendants Pettis County are vicariously liable were outrageous and exhibited an evil motive or reckless indifference to the rights of others, thereby entitling Plaintiffs to an award of punitive damages.


**WHEREFORE,** Plaintiffs pray for judgment against Defendants in a fair and reasonable amount in excess of seventy-five thousand dollars ($75,000.00) for the harms and losses they have suffered, for their costs incurred herein, for attorneys' fees, for punitive damages, and for any further relief this Court deems just and proper.

Respectfully Submitted for Plaintiff's By,


**PERRY LAW FIRM, LLC**

/s/ Alex Perry

Alex Perry

Bar Number: 64079

Perry Law Firm

1220 Columbia, MO 65203

Telephone: 573-777-2623

APerryLawFirm@gmail.com


**ATTORNEY FOR DEFENDANT**